## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Nicole Vesota, individually and on behalf of all others similarly situated, | 1:21-cv-03574 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Aldi Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Aldi Inc. ("defendant") manufactures, labels, markets and sells gouda cheese purporting to get its smoked taste entirely from being smoked, under its Emporium Selection brand ("Product").



2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3. The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4. While the popularity of smoking decreased in the mid-20th century due to the introduction of "convenient" chemical preservatives, the last two decades have seen a resurgence in smoked foods, as consumers embrace foods made without advanced chemistry and synthetic ingredients.

5. According to consumer research by Mintel, consumers are increasingly seeking foods that get their taste only from a characterizing ingredient or a natural processing method.

6. Mintel reports that consumers are aware of the lack of transparency in the flavor industry, which has regularly been highlighted by non-profits such as the Environmental Working Group ("EWG").[1]

7. The EWG often identifies foods with "natural" flavors but which also contain "incidental" additives such as emulsifiers and solvents, that may pose health or nutritive risks.

8. Innova Market Insights posited that "no added flavor" may be an emerging consumer trend.[2]

9. This trend is unique because it is not necessarily based on a "claim," per se, but by the absence of a front label statement which is required to inform consumers that a food's taste is from something *added*.

10. Federal and identical state law requires that a product's front label disclose the source

---

[1] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.
[2] Innova Market Insights, Flavors: Trends and Sustainability, Sept., 2018.

of any characterizing flavor. 21 C.F.R. § 101.22(i).[3]

11. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[4]

12. The disclosure on a front label of whether a food is flavored by "added smoke flavor" or from being smoked is basic information on which consumers rely when making quick purchasing decisions at the grocery store. 21 C.F.R. § 101.22(i).

13. Federal regulations require that:

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

21 C.F.R. § 101.22(i)(1)(i).

14. Where a food's flavor does not come exclusively from a characterizing ingredient or processing method, but contains natural flavor derived from that ingredient or processing method, this must be disclosed to consumers on the front label, in addition to on the ingredient list. 21 C.F.R. § 101.22(i).

15. Consumers prefer foods that are flavored from a natural production process – being smoked – instead of having added smoke flavor.

16. The European Food Safety Authority reported that many smoke flavorings added to

---

[3] Illinois law incorporates the federal requirements for food labeling.
[4] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

3

food – to make them seem like they were smoked – were dangerously close to levels which may be toxic to humans.[5]

17. The addition of added smoke flavor is not only an issue of consumer health, but of quality.

18. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[6]

19. Defendant's Product is labeled as "Smoked Gouda" and the front label does not disclose the addition of any added natural smoke flavor.

20. Consumers will reasonably expect the Product to contain a sufficient amount of flavor from having undergone a smoking process, such that it is not necessary to add any natural smoke flavor.

21. Smoked gouda cheese that gets its smoked taste exclusively from being smoked is not a rare or pricy delicacy that would make a reasonable consumer "double check" the veracity of the front label claim by the fine print ingredient list.

22. However, the Product is misrepresented as "Smoked Gouda" because the ingredient list reveals it contains "Smoke Flavor," which is "smoke condensed into a liquid form" instead of from being smoked.[7]

---

[5] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010. By on February 16, 2010
[6] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.
[7] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

4



**INGREDIENTS:** PASTEURIZED MILK, CHEESE CULTURES, SALT, MICROBIAL ENZYMES, COLOR ADDED, NATURAL SMOKE FLAVOR

23. Through listing "NATURAL SMOKE FLAVOR" on the ingredient list, the Product tacitly admits that *even if* it has undergone smoking, it was *not smoked enough* to sufficiently impart a characterizing smoke flavor.

24. Consumers are misled because the absence of the qualifying terms, "natural smoke flavored Gouda" or "smoke flavored Gouda," gives them the false impression that all the smoke taste was due to being smoked. 21 C.F.R. § 101.22(i)(1)(i); 21 U.S.C. § 343(i).

25. Given that the Product acknowledges it contains "NATURAL SMOKE FLAVOR," the only purpose of such added flavor would be to boost the Gouda's flavor, beyond any minimal amount of actual smoking which it may have received.

26. The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aliphatic, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

27. Assuming that the Product was subjected to a de minimis amount of smoking, added

smoke flavoring is unable to impart the same, real smoked taste of real smoking.

28. This is because added smoke flavor cannot duplicate the smoked taste from smoking.

29. First, added smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

30. Second, the smoke generation process dramatically influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

31. When foods like Gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

32. Even if the Product underwent some smoking and has *some* of these flavor compounds, the addition of added smoke flavoring is an acknowledgement it does not have a sufficient amount of these compounds, which is why it contains added smoke flavor.

33. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

34. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

35. This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

36. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives.

37. The value of the Product that plaintiff purchased was materially less than its value as

represented by defendant.

38. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

39. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

40. The Product is sold for a price premium compared to other similar products, no less than $3.99 for 10 slices (8 oz), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

41. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

42. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

43. Plaintiff Nicole Vesota is a citizen of Wisconsin.

44. Defendant Aldi Inc. is an Illinois corporation with a principal place of business in Batavia, Kane County, Illinois

45. The parties are citizens of different states.

46. Venue is in this district because defendant resides in this district.

## Parties

47. Plaintiff Nicole Vesota is a citizen of Brillion, Calumet County, Wisconsin.

48. Defendant Aldi Inc., is a Illinois corporation with a principal place of business in Batavia, Illinois, Kane County.

49. Aldi is the common brand of two German family-owned discount supermarket chains

with over 10,000 stores in 20 countries and an estimated combined turnover of more than €50 billion. T

50. Defendant operates more than 2,000 stores across 36 states.

51. Defendant is known for selling the highest quality goods, based on its "no frills" approach which saves costs, that are passed on to the consumer.

52. Most of the items sold by Defendant are under its store brands, like cheese under its Emporium Selection brand.

53. These items are equivalent in quality to, and usually exceed, their national brand competitors.

54. The Product is sold at Aldi stores in Wisconsin and Illinois.

55. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from defendant's stores including the location in Grand Rapids, Michigan, between December 2020 and January 2021, among other times.

56. Plaintiff saw the front label that said, "Smoked Gouda" and that there was no mention of added smoke flavor.

57. Plaintiff expected that any smoke taste was entirely from being smoked.

58. Plaintiff wanted more than a "smokey" taste but a product that was sufficiently smoked so that it did not require added "smoke flavor."

59. Plaintiff bought the Product at or exceeding the above-referenced price.

60. Plaintiff relied on the representations identified here.

61. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

62. Plaintiff chose between Defendant's Product and other similar products which were

8

represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

63. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

64. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

65. The class will consist of Wisconsin, Ohio, Texas, Illinois, and Virginia residents who purchased the Product during the statutes of limitations for each cause of action alleged.

66. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

68. Plaintiff is an adequate representative because her interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff and class members desired to purchase a product which was sufficiently smoked so that it would not require the addition of added smoke flavor.

75. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

76. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

77. Plaintiff relied on the representations.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

79. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was sufficiently smoked so that it would not require the addition of added smoke flavor.

80. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

81. This duty is based on Defendant's outsized role in the market for this type of Product.

82. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

83. Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

84. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

85. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

86. Defendant had a duty to truthfully represent the Product, which it breached.

87. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians of the Emporium Selection brand.

88. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, an iconic brand.

89. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

90. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

91. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that they was sufficiently smoked so that it would not require the addition of added smoke flavor

92. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

93. Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 3, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com